MIDLAND COAL MINING COMPANY *v.* RODDEN.

Opinion delivered July 13, 1931.

*A. M. Dobbs* and *John W. Goolsby,* for appellant.

*Harper & Harper* and *George W. Johnson,* for appellee.

HUMPHREYS, J.   This is an appeal from a judgment for $3,000 recovered in the circuit court of Sebastian County, Greenwood District, by appellee against appellant for the alleged negligent killing of its employee Thomas Rodden on the 20th day of July, 1930, by a gas explosion within its coal mine while he was engaged in operating the pump therein.   The gist of the action was the alleged negligence of appellant in failing to prevent gas from accumulating in quantities sufficient to cause an explosion which resulted in the death of appellee's intestate.

Appellant interposed the defenses that deceased was not its employee, that he was guilty of contributory negligence, and that he assumed the risk of his employment.

The testimony offered in support of the recovery is, in substance, as follows:

Thomas Rodden was killed by a gas explosion in appellant's coal mine which was caused by gas coming in contact with fire at or about one-thirty A. M. on Sunday, July 2, 1930, when substituting as pumper for Bill White at his request.   Bill White was and had been the regular pumper for a year, and, in addition to operating the pump, it was his duty after shots had been fired to tear down coal to search for fire, and when found, to put it out so as to prevent gas explosions in the mine.   At the time of the explosion, a fan which was operated by the company with steam had been stopped in order to clean

out the boilers. This fan was operated in order to meet the requirements of § 7284 of Crawford & Moses' Digest to carry air currents to sweep the gas out of the mine which was continually entering same through crevices commonly called gas feeders. When the fan was operating, it prevented an accumulation of gases sufficient to cause an explosion. Gas was constantly entering the mine and in the greatest volume in the third west entry room. It was a large room, and a "gob" was built eight feet wide and as high as the roof to hold the refuse and was filled with the debris. There was a large gas feeder behind the "gob wall" with a pocket around it, and, in order to reach this feeder, a passageway eighteen inches wide was cut through the "gob wall" the day before, of which Bill White had no knowledge. In firing the shots to tear down the coal, it frequently happened that the gas feeders would catch fire and burn until the fire searcher discovered same and put it out. When Bill White requested deceased to substitute for him, he directed him to go through the mine, search for, and put out all fire after the shots had been fired but did not tell him that a gas feeder was back of the "gob wall" and that there was a passageway leading to it. He told him the greatest quantity of gas accumulated in the west third entry and that he would have to wade through water to reach the gas feeders therein. In the judgment of all the witnesses, the explosion was caused by an accumulation of gas coming in contact with fire in the west third entry. They came to this conclusion from the fact that the "gob wall" therein had been damaged and that the things in the mine indicated that the force of the explosion came from that direction. A search party was organized, and they found the deceased lying in the second east entry and his cap, carbide lamp, flashlight, and other belongings scattered about at different points. He was dead when they found him, and was the only man working in the mine at the time of the explosion. Deceased was White's predecessor and was promoted to the

position of machine runner, which position was filled by him until some two months prior to the explosion. He did not take employment elsewhere and was used as a substitute by other employees at intervals. Bill White had used him as a substitute at least four times. Bill White procured several others to substitute for him during the year he was engaged as pumper whenever he did not want to work himself. When he procured a substitute, he wrote his name on a time sheet, which was handed to one of appellant's directors, who transmitted it to the clerk who in turn made it the basis of the payroll. These substitutes were paid by John Conroy, the president and manager of appellant.

The first contention of appellant for a reversal of the judgment is that no evidence was introduced tending to show that appellant was its employee. We cannot agree with appellant in this contention. A custom had grown up in the operation of the mine to allow the regular pumper to select a substitute to temporarily take his place in case he did not want to work. The president and manager of appellant company would and did pay such substitute for their work without question. In the instant case, he paid appellee after the death of deceased for several nights' work including the night of the explosion without even suggesting that the employment was without authority. It was bound by the custom it allowed to grow up with respect to substitutes and cannot be heard to say that deceased was not in its employ.

The second contention of appellant for a reversal of the judgment is that the evidence failed to show any negligence on its part. Section 7284 of Crawford & Moses' Digest requires that operators of coal mines shall maintain a current of air through the mine while men are at work in it. Appellant operated a fan for this purpose but stopped it in order to clean out its boiler and allowed deceased to remain at his post of duty before renewing the operation of the fan. The violation of the statute

tended to show negligence on its part, and this issue was submitted to the jury under a correct instruction.

The third contention of appellant for a reversal of the judgment is that the death of deceased was due entirely to his own negligence in failing to extinguish the fires after the blasting was finished. It is in evidence that the large gas feeder was behind a "gob wall" in the west third entry, to which a passageway had been cut for the purpose of reaching it and putting out the blaze in case it caught fire from the shot.

Although deceased was directed to go to the west third entry and put out any fire that might be there after the blasting, he was not told of the crevice behind the "gob wall" or the passageway leading to it which had been cut through the "gob wall" the day before the explosion. This crevice was in a manner hidden and was at the place where the witnesses concluded the explosion originated. The jury was warranted from this evidence in finding that deceased was not guilty of contributory negligence resulting in his death.

The fourth contention of appellant for a reversal of the judgment is that deceased assumed the risk of his employment. He did not assume the risk or dangers resulting from the negligence of appellant in failing to notify him of gas feeders or crevices obscured from view. He had no knowledge of this negligence on the part of appellant, and could not have appreciated the dangers incident to his employment. Before an employee can assume the dangers incident to his employment, he must know of them and appreciate the dangers arising therefrom.

We have examined the instructions given by the court and have concluded that they are correct and that they have fully covered all the issues in the case.

No error appearing, the judgment is affirmed.